UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DARLENE GOMES,

          NO. CIV. S-06-1921 LKK/KJM

    Plaintiff,

  v.

          O R D E R

MICHAELS STORES, INC.;
BROADSPIRE SERVICES, INC.;
KRISTINE BLAS; and
DOES 1-100,

    Defendants.
_____/

    Darlene Gomes ("plaintiff") brings a wrongful termination action against her former employer, Michaels Stores, Inc. ("Michaels") and Broadspire Services Inc., Michaels workers' compensation insurance carrier ("Broadspire").[1] Pending before the court is a motion to dismiss filed by Broadspire. Broadspire maintains that the Workers' Compensation Act provides the exclusive remedy for plaintiff's claims. For the reasons set forth below,

---

[1] On October 26, 2006, the court found that Kristine Blas, a Broadspire agent, was an improperly joined defendant and was therefore dismissed pursuant to Rule 21.

1

the court grants Broadspire's motion.

**I.**

**BACKGROUND FACTS**

**1. Facts as Alleged in the Complaint**

Plaintiff began employment with Michaels in July of 1994 and held the position of Office Specialist. In 2003, plaintiff was promoted to the position of Lead Sales Person, and in August of 2004 she was again promoted to Front End Supervisor. She held this position until the termination of her employment on October 15, 2004. Plaintiff alleges that at all times during her employment Broadspire was the workers' compensation insurance carrier for her employer, Michaels.

In December of 1999 plaintiff sustained a work-related injury which affected her right shoulder, leg, hip and arm. She was treated and released to return to work shortly thereafter. Plaintiff subsequently filed a claim for workers' compensation. This claim is still pending.

According to plaintiff, Broadspire requested that plaintiff submit to a series of medical examinations and misrepresented the purpose of these examinations. Plaintiff alleges that the true intention of these exams was for Michaels to use the information as a basis of terminating plaintiff's employment. Similarly, prior to a medical examination on September 24, 2004, Broadspire allegedly forwarded to the medical examiner an outdated description of plaintiff's occupational duties. This description allegedly referred to the position of Lead Sales Associate, when at that time

1  plaintiff held the position of Front End Supervisor. Pursuant to
2  this incorrect occupational description and the multiple medical
3  reviews, an allegedly inaccurate medical report was issued and
4  plaintiff was given work restrictions that Michaels was unable to
5  accommodate. Rather than accommodate plaintiff's needs, Michaels
6  elected to terminate her.

**2. Plaintiff's Claims**

Plaintiff alleges that Michaels sought to avoid paying her future medical expenses and that together with Broadspire, conspired to terminate her employment. She states five causes of action against Broadspire: (1) invasion of privacy; (2) conspiracy to terminate; (3) fraud & deceit; (4) unfair competition; and (5) intentional infliction of emotional distress. Plaintiff alleges these same five claims against Michaels, as well as additional claims for wrongful termination in violation of public policy and failure to make timely payment of wages, in violation of Cal. Lab. Code § 203.

Broadspire now moves to dismiss on the grounds that plaintiff's claims stem from an injury sustained at work and therefore, her sole remedy is found in the workers' compensation system.

## II.

### Standard for Motion to Dismiss

On a motion to dismiss, the allegations of the complaint must be accepted as true. See Cruz v. Beto, 405 U.S. 319, 322 (1972). The court is bound to give the plaintiff the benefit of every

3

1  reasonable inference to be drawn from the "well-pleaded"
2  allegations of the complaint. See Retail Clerks Intern. Ass'n,
3  Local 1625, AFL-CIO v. Schermerhorn, 373 U.S. 746, 753 n.6 (1963).
4  Thus, the plaintiff need not necessarily plead a particular fact
5  if that fact is a reasonable inference from facts properly alleged.
6  See id.; see also Wheeldin v. Wheeler, 373 U.S. 647, 648 (1963)
7  (inferring fact from allegations of complaint).

8  In general, the complaint is construed favorably to the
9  pleader. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). So
10 construed, the court may not dismiss the complaint for failure to
11 state a claim unless it appears beyond doubt that the plaintiff can
12 prove no set of facts in support of the claim which would entitle
13 him or her to relief. See Hishon v. King & Spalding, 467 U.S. 69,
14 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).
15 In spite of the deference the court is bound to pay to the
16 plaintiff's allegations, however, it is not proper for the court
17 to assume that "the [plaintiff] can prove facts which [he or she]
18 has not alleged, or that the defendants have violated the . . .
19 laws in ways that have not been alleged." Associated General
20 Contractors of California, Inc. v. California State Council of
21 Carpenters, 459 U.S. 519, 526 (1983).

**III.**

**Analysis**

24 Because the WCA provides the exclusive remedy for work-related
25 injuries and claims deriving from such an injury, plaintiff may
26 only seek remedies for her present claims within the WCA.  The

4

1  court's task, therefore, is to determine whether the pending claims
2  against Broadspire are sufficiently tied to plaintiff's
3  occupational injury to be barred by the WCA exclusivity provision.
4  The court sets forth the relevant legal framework and then
5  addresses the five claims which pertain to Broadspire.

**1. Workers' Compensation Exclusivity**

An employee's right to recover against an employer is usually limited to remedies set forth in the Workers' Compensation Act. (Cal. Lab. Code § 5300).[2]  The exclusivity feature of the workers' compensation system is sometimes known as the "compensation bargain." Shoemaker v. Myers, 52 Cal. 3d 1, 15-16 (1990).  The function of exclusivity, "is to give efficacy" to that bargain. Id. at 16.  Under this "bargain,"

---

[2] Cal. Lab. Code § 5300 states in part:

> All the following proceedings shall be instituted before the appeals board and not elsewhere, except as otherwise provided in Division 4:
>
> (a) For the recovery of compensation, or concerning any right or liability arising out of or incidental thereto.
>
> (b) For the enforcement against the employer or an insurer of any liability for compensation imposed upon the employer by this division in favor of the injured employee, his or her dependents, or any third person.
> ...
>
> (f) For the determination of any other matter, jurisdiction over which is vested by Division 4 in the Division of Workers' Compensation, including the administrative director and the appeals board.

5

> the employer assumes liability for industrial personal injury or death without regard to fault in exchange for limitations on the amount of that liability. The employee is afforded relatively swift and certain payment of benefits to cure or relieve the effects of industrial injury without having to prove fault but, in exchange, gives up the wider range of damages potentially available in tort.

Id. The Legislature has extended the protection of these exclusive remedy provisions to workers' compensation insurance carriers by defining the word "employer" to include "insurer." (Cal. Lab. Code. § 3850(b).) This provision similarly limits the insurer's exposure to liability with respect to the employee.

The court in Unruh v. Truck Ins. Exchange, 7 Cal. 3d 616, 630 (1972)[3] provides insight into the objective of the Legislature's perception of the workers' compensation scheme:

> A negligent investigation of an employee's claim may well be an aberration in the carrier's normal activities, but when it does have a harmful effect on the employee, we see no reason why it cannot be treated by the Board as a compensable aggravation of the original injury, if the evidence so warrants. This result provides for prompt and effective relief within the compensation scheme without disturbing the administrative process. We can find no justification either in statutory or policy considerations for treating the negligent carrier as no longer acting as a carrier but rather as a third party

Unruh, 7 Cal. 3d at 628.

**a.   The Test for Exclusivity**

Determining whether a claim is barred by the exclusivity provision of the WCA involves a three step analysis. First, "the trigger for workers' compensation exclusivity is a compensable

---

[3] Unruh was overruled by statutory amendment on other grounds. Cal. Lab. Code § 3602 (expressly eliminating the "dual capacity" doctrine as an exception to workers' compensation exclusivity). The dual capacity doctrine is not relevant in the case at bar.

6

injury," <u>Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund</u>, 24 Cal. 4th 800, 813 (2001). A workplace injury, such as the one alleged in the case at bar, constitutes a compensable injury. <u>Id.</u>

The second prong of the analysis is determining whether the alleged claims raised in the complaint are "collateral to or derivative" of the compensable injury. <u>Id.</u> Claims which are collateral to or derivative of the compensable injury are barred under the exclusivity clause. Moreover, it is well established that disputes which arise over the handling of compensation claims "fall within the scope of the exclusive remedy provisions because this process is tethered to a compensable injury." <u>Id.</u> at 815. <u>See</u> also <u>Marsh & McLennan, Inc v. Superior Court</u>, 49 Cal. 3d 1, 8 (1989) ("[t]he workers' compensation system encompasses all disputes over coverage and payment, whether they result from actions taken by the employer, [or] by the employer's insurance carrier"); <u>Stoddard v. Western Employers Ins. Co.</u>, 200 Cal. App. 3d 165, 168-69 (4th Dist. 1988) (injury claim resulting from a delay in payment of benefits is confined to the jurisdiction of the WCAB).

If the claims are collateral to or derivative of the compensable injury, a plaintiff may still pursue his or her causes of action if the, fit within the "narrow exception to the [WCA] jurisdiction" established in <u>Unruh</u>, 7 Cal. 3d at 630, <u>see</u> <u>Vacanti</u>, 24 Cal.4th at 819. This narrow exception applies when the conduct by an employer or insurer goes beyond the normal role contemplated in the compensation scheme. <u>See</u> <u>Unruh</u>, 7 Cal. 3d at 630. Conduct

'so extreme and outrageous that' the insurer 'in effect stepped out of its role as' an insurer precludes the application of workers' compensation exclusivity. Vacanti, 24 Cal. 4th at 820, (citing Marsh, 49 Cal. 3d at 11); see also Unruh, 7 Cal. 3d at 616 (actions by claims investigator who became romantically involved with claimant were not subject to WCA exclusivity).

The California courts have construed this exception narrowly. Marsh & McLennan, 49 Cal. 3d at 6. Even allegations of fraud and misconduct by an insurer in the processing of claims are subject to the exclusive jurisdiction of the WCAB. Vacanti, 24 Cal. 4th at 821; see also Mitchell v. Scott Wetzel Services, Inc., 227 Cal. App. 3d 1474 (4th Dist. 1991) (WCA holds exclusive jurisdiction over injured employee's allegations of insurer misrepresentations and perjury in connection with claims handling).

In making this determination, courts may consider only those acts that relate to an element of the cause of action. Where these acts are "a normal part of the employment relationship" or the workers' compensation claims process, the cause of action is subject to exclusivity. Vacanti, 24 Cal.4th at 820. As the Vacanti court explained:

> Insurer activity intrinsic to the workers' compensation claims process is also a risk contemplated by the compensation bargain. Thus, insurer actions 'closely connected to the payment of benefits' fall within the scope of the exclusive remedy provisions.

Id. at 821 (citations omitted). For example, a claims investigation, by itself, does not exempt a cause of action from exclusivity. See Unruh, 7 Cal.3d at 628-629. As the Vacanti court

8

observed, "California courts have invariably barred statutory and tort claims alleging that an insurer unreasonably avoided or delayed payment of benefits even though the insurer committed fraud and other misdeeds in the course of doing so." <u>Vacanti</u>, 24 Cal. 4th at 821. In short, "where the tortious act is not closely connected to a normal employer or insurer action, it is not subject to exclusivity." <u>Id.</u> at 822.

Similarly, in making this determination, "courts consider only the acts themselves-and not the motive behind the acts." <u>Id.</u> "The critical issue is whether the alleged acts, bereft of their motivation, 'can ever be viewed as a normal aspect of the employer relationship' or claims process." <u>Id.</u> at 822 (citations omitted). Thus,

> [C]ourts should disregard any alleged intent beyond the intent to do the acts that establish the elements of the cause of action when determining whether these acts are encompassed within the compensation bargain. Such a focus is necessary in order to preserve the compensation bargain. Indeed, permitting civil claims based on conduct that 'appeared on its face to be a normal part of the employment relationship [or claims process] ... merely because the mental state ... rendered the conduct intentionally or knowingly tortious' undermines the premise behind the workers' compensation system.

<u>Vacanti</u>, 24 Cal.4th at 820 (citations omitted); <u>see also</u> <u>Fermino v. Fedco, Inc.</u>, 7 Cal.4th 701, 717 (1994) (holding that normal employer actions causing injury does not fall outside the scope of the exclusivity rule merely by plaintiff attributing to the employer a sinister intention).

Finally, in "adjudicating whether a claim falls within the workers' compensation system, all doubt should be resolved in favor

9

of finding jurisdiction within the workers' compensation system." Mitchell, 227 Cal. App. 3d at 1480; see also Fremont Indemnity Co. v. Superior Court, 133 Cal. App.3d 879, 881 (2nd Dist. 1982) ("The preferred policy is to repose in the WCAB as much as possible resolution of problems and alleged claims arising out of workers' compensation matters."]; Gilford v. State Compensation Ins. Fund, 41 Cal. App. 3d 828, 834 (1st Dist. 1974) ("Where there is any reasonable doubt as to the jurisdiction, the courts must resolve such doubts in favor of jurisdiction"). Accordingly, a close case should be found to fall within the exclusivity provision of WCA.

**2. Plaintiff's Claim for Conspiracy to Terminate in Violation of Public Policy**

As a threshold matter, the court addresses plaintiff's third cause of action which alleges that Broadspire conspired to terminate plaintiff's employment in violation of public policy. This claim is dismissed on the grounds that Broadspire cannot be liable for an act that it cannot commit, namely, terminating plaintiff's employment.[4]

California courts have consistently held that "a third party who is not and never has been the plaintiff's employer cannot be bootstrapped by conspiracy into tort liability for a wrong he is legally incapable of committing." Weinbaum v. Goldfarb, Whitman & Cohen, 46 Cal. App. 4th 1310, 1313 (2nd Dist. 1996); see also

---

[4] It is not clear to the court why the ordinary rules of joint action do not apply, but as I indicate above, they apparently do not.

10

Khajavi v. Feather River Anesthesia Med. Group, 84 Cal. App. 4th 32, 55 (3rd Dist. 2000) (Plaintiff's claim of conspiracy to terminate his employment fails because a "non-employer defendant-who cannot commit the tort of wrongful discharge in violation of public policy-can have no liability for a conspiracy to wrongfully discharge the employee.")

As the insurance carrier to plaintiff's employer, Broadspire is not in an employment relationship with plaintiff. Like the defendants in Weinbaum and Khahavi, Broadspire is a third party. Simply put, a conspiracy to terminate claim cannot lie against the insurer, who is not, and has not been, plaintiff's employer.

Plaintiff spends the majority of her opposition arguing that she was wrongfully discharged. Citing to City of Moorpark v. Superior Court, 18 Cal. 4th 1143(1998), plaintiff argues that workers' compensation is not the exclusive remedy for disability discrimination and wrongful discharge. The court agrees that Moorpark supports the general principal that claims alleging wrongful discharge or discrimination are not necessarily barred by the exclusivity provision. What plaintiff fails to appreciate is that the plaintiff in Moorpark brought suit against her employer. The Moorpark plaintiff did not bring suit against a workers' compensation carrier or claims administrator. In the case at bar, plaintiff fails to cite to any legal basis for how Broadspire could be held liable for a claim of wrongful termination.

**3. Plaintiff's Tort-Based Claims**

Plaintiff brings three causes of action against Broadspire

11

which may be characterized as tort-based claims. They are: invasion of privacy, fraud (and deceit), and intentional infliction of emotional distress. The court must determine whether these claims are barred by the exclusivity provision of the WCA.

As discussed above, "the trigger for workers' compensation exclusivity is a compensable injury," Vacanti, 24 Cal.4th at 813. A workplace injury, such as the one plaintiff suffered in December of 1999, constitutes a compensable injury. Id. The court next determines whether the alleged tort claims are "collateral to or derivative" of the compensable injury. Claims which are collateral to or derivative of the compensable injury are barred under the exclusivity clause. If it is determined that the claims are collateral to or derivative of the compensable injury, the court also considers whether the Unruh exception precludes the exclusivity bar.

**a. Invasion of Privacy & Intentional Infliction of Emotional Distress**

Plaintiff claims that Broadspire invaded her right to privacy and caused her emotional distress. Specifically, plaintiff alleges that she was subjected to "multiple, intrusive physical examinations based on fraudulent misrepresentations as to the real purpose of said records." Compl. ¶ 72. Plaintiff also claims that defendants (she does not specify which) used her medical records in an impermissible way, namely, to terminate her employment.

12

Compl. ¶ 73.[5]

Both plaintiff's claims for invasion of privacy and emotional distress stem directly from her workers' compensation claim. Being subjected to repeated medical exams is collateral to and derivative of her workplace injury. Indeed, the gist of plaintiff's claims "arise out of and in the course of" her workers' compensation claim. Vacanti, 24 Cal. 4th at 815.

With respect to the records being used to terminate plaintiff's employment, as discussed above, Broadspire was not legally capable of terminating plaintiff and therefor, cannot be liable for that aspect of plaintiff's claims.[6] Moreover, merely alleging that Broadspire acted with an illegal intent does not remove the claim from the exclusivity bar. Fermino, 7 Cal.4th at 717.

The court next considers whether the conduct giving rise to plaintiff's alleged emotional injury and invasion of privacy is of the kind reasonably encompassed in the compensation bargain. As mentioned earlier, the question is "whether the alleged acts, bereft of their motivation, 'can ever be viewed as a normal aspect of the...claims process.'" Vacanti, at 822. (citations omitted).

In the case at bar, all alleged conduct by Broadspire relates

---

[5] I note in passing plaintiff has not brought suit alleging violation of the ADA or its state counterpart.

[6] This is not to say that plaintiff does not have a viable claim against defendant Michaels. Whether Michaels invaded plaintiff's privacy and caused emotional distress, and whether those claims would be barred under the exclusivity provision as to Michaels, are not questions not before the court.

directly to the processing of plaintiff's compensation claim. Requests for medical examinations are a normal and necessary part of the claims process. In this case, plaintiff was examined on four separate occasions between September of 2000 and July of 2004. As Broadspire points out in its motion to dismiss, the Labor Code expressly envisions repeated medical examinations as part of the workers' compensation claim process:

> Whenever the right to compensation under this division exists in favor of an employee, he shall, upon the written request of his employer, submit at **reasonable intervals** to examination by a practicing physician, provided and paid for by the employer, and shall likewise submit to examination at **reasonable intervals** by any physician selected by the administrative director or appeals board or referee thereof.

Cal. Lab. Code § 4050 (emphasis added). The court finds that four separate medical exams over the course of four years is consistent with the Labor Code, clearly falls within the normal workers' compensation claims process and is not "outrageous or extreme."

Plaintiff gives short shrift to these claims in her opposition. Plaintiff argues that Broadspire was "motivated by an illegal purpose, to disqualify the plaintiff for a job she was already doing without restriction." Pl.'s Opp'n at 10:1-3. She also claims that Broadspire was acting outside of the their normal role in the claims processing. Id. at 7. As noted above, it is well established that motivation is not a factor the court considers. See Vacanti, 24 Cal. 4th at 820-21. Moreover, plaintiff fails to explain how being subjected to multiple medical exams constitutes action which falls outside of an insurer's normal

14

actions in a workers' compensation claim process.

For these reasons, plaintiff's claims for invasion of privacy and intentional infliction of emotional distress are subject to the WCA bar of exclusivity and must be dismissed.

**b.     Fraud & Deceit**

Plaintiff next claims that Broadspire's actions constituted fraud and deceit. Plaintiff alleges that in reliance on fraudulent statements made by Broadspire, she was forced to undergo medical examinations, was placed on leave at work, and was ultimately terminated due to her disability. Plaintiff specifically states that Broadspire engaged in fraud when it required four medical exams. In the general allegations section of the complaint, plaintiff also claims that Broadspire knowingly provided the wrong job description to the examining doctor. This faulty job description caused the examining doctor to find that plaintiff needed certain work restrictions.

As with the claims for invasion of privacy and intentional infliction of emotional distress, the claim regarding fraud and deceit is collateral and derivative of plaintiff's workers' compensation claims process. Indeed, these claims are sufficiently tethered to plaintiff's workers' compensation claim that any allegation of fraud or deceit "can be well inquired into by the board and where necessary, discipline imposed." Marsh, 49 Cal.3d at 7.

The court also determines that the acts implicated by plaintiff's claims do not go "beyond the normal role of an insurer

15

in a compensation scheme" <u>Unruh</u>, 7 Cal. 3 at 630. As discussed above, multiple medical exams do not constitute extreme or outrageous conduct which falls outside of the normal course of a workers' compensation claim.

Perhaps plaintiff's strongest argument is that Broadspire intentionally gave the examining doctor the wrong job description. However, even this alleged wrong act falls within the normal conduct of an insurer. Again, the court looks not to the alleged motivation of the insurer, but only the act. <u>Vacanti</u>, 24 Cal.4th at 820. Here, the allegations are insufficient for a finding that by providing the wrong job description Broadspire "stepped out of it's role as an insurer." <u>Marsh</u>, 49 Cal. 3d at 11.

Indeed, as the <u>Vacanti</u> decision points out, with respect to insurers, the conduct alleged must be extreme:

> courts have permitted fraud claims when the insurer denies the existence of a workers' compensation insurance policy, because such denials are not a normal part of the claims process. Trespassing is also an atypical insurer activity even when committed in the course of a claims investigation. Therefore, it falls outside the compensation bargain. Finally, assault and the formation of a romantic relationship with an injured employee are not closely connected to the claims process and are exempt from exclusivity.

<u>Vacanti</u>, 24 Cal. 4th at 822-23 (citations omitted). It is clear that in the few instances in which fraud claims have not been barred, the alleged wrongful conduct was much more extreme than the conduct alleged in the instant case.

Other courts faced with fraud claims akin to those in the case at bar have come to similar conclusions regarding exclusivity. <u>See</u> <u>Vacanti</u>, 24 Cal. 4th at 829 (fraud claim barred by exclusivity of

16

WCA); Lamke v. Sunstate Equipment Co., 387 F. Supp. 2d 1044, 1051 (N.D. Cal. 2004)(plaintiff's fraud claim is "encompassed within the compensation bargain"); Mitchell, 227 Cal. App. 3d at 1474 (4th Dist. 1991) (WCA holds exclusive jurisdiction over injured employee's allegations of insurer misrepresentations and perjury in connection with claims handling).

For these reasons, the court finds that plaintiff's fraud and deceit claims are barred and must be dismissed.

**4. Plaintiff's Unfair Competition Claim**

Plaintiff also alleges the Broadspire engaged in unfair or fraudulent business practices, in violation of Cal. Bus. & Prof. Code §§ 17200 et. seq. To plead a cause of action under the Unfair Competition Law ("UCL"), a plaintiff must show that "members of the public are likely to be deceived." Quacchia v. DaimlerChrysler Corp., 122 Cal. App. 4th 1442, 1453 (1st Dist. 2004). A plaintiff does not need to state the elements of a tort. Id. Therefore, claims under the UCL "only escape preemption if the underlying acts fall outside the scope of the compensation bargain." Vacanti, 24 Cal. 4th at 828.

As best as the court can decipher from the complaint, Broadspire's alleged unfair or fraudulent conduct included requests for medical examinations and misrepresentations regarding both the purpose of these examinations and the physical duties required of plaintiff's job. However, plaintiff's complaint contains no allegations as to how these actions were likely to "deceive the public." The allegations suggest that plaintiff was deceived, but

17

1 fails to discuss how the public was deceived.  On this ground
2 alone, plaintiff's claim must be dismissed.
3      The claim may also be dismissed on exclusivity grounds.  For
4 the reasons noted earlier, the underlying acts which support
5 plaintiff's UCL claim are all closely tied to the workers'
6 compensation claims process.   Accordingly, plaintiff's unfair
7 competition claim is barred by the WCA exclusivity rule.

**V.**

**CONCLUSION**

10      For the reasons explained above, Broadspire's motion to
11 dismiss is GRANTED.
12      IT IS SO ORDERED.
13      DATED:  November 15, 2006.

_[signature]_
LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

18